1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MARY BROWNLEE,                           No.  2:14-cv-1724 AC

12              Plaintiff,

13        v.                                  ORDER

14   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,
15
                Defendant.
16

17

18        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner"), denying his application for disability insurance benefits ("DIB") under Title II

20   of the Social Security Act, 42 U.S.C. §§ 401-34, and for Supplemental Security Income ("SSI")

21   under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383f.[1]

22        For the reasons that follow, the court will grant plaintiff's motion for summary judgment,

23   deny the Commissioner's cross-motion for summary judgment, and remand this matter for the

24

25   _____
     [1]  DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and
     who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1); Bowen v. City of New
     York, 476 U.S. 467, 470 (1986).  SSI is paid to financially needy disabled persons.  42 U.S.C.
26   § 1382(a); Washington State Dept. of Social and Health Services v. Guardianship Estate of
     Keffeler, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 et seq., is the Supplemental
27   Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including
     children, whose income and assets fall below specified levels . . .").

28

1    immediate calculation and payment of benefits to plaintiff.

2                                  I.  PROCEDURAL BACKGROUND

3           Plaintiff applied for disability insurance benefits and for supplemental security income in

4    June, 2011.  Administrative Record ("AR") 189-92 (Exh. B1D), 193-202 (Exh. B2D).[2]  The

5    disability onset date for both applications was alleged to be March 20, 2011.  AR 189, 193.  The

6    applications were disapproved initially, AR 80-91, 92 (Exhs. B1A, B2A), 93-104, 105 (Exhs.

7    B3A, B4A), and on reconsideration, AR 106-16, 117 (Exhs. B5A, B6A), AR 118-28, 129

8    (Exhs. B7A, B8A).  On February 20, 2013, ALJ Evangelina P. Hernandez presided over the

9    hearing on plaintiff's challenge to the disapprovals.  AR 36-79 (transcript).  Plaintiff was present

10   and testified at the hearing.  AR 39, 41-70.  She was represented by Langley Kreuze, Esq., at the

11   hearing.  AR 36.  Cheryl R. Chandler, Vocational Expert, also testified at the hearing.  AR 71-77.

12          On March 13, 2013 , the ALJ issued an unfavorable decision, finding plaintiff "not

13   disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and

14   Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A).  AR 17-31 (decision),

15   32-35 (exhibit list).  On May 21, 2014, after receiving counsel's May 8, 2013 brief as an

16   additional exhibit, the Appeals Council denied plaintiff's request for review, leaving the ALJ's

17   decision as the final decision of the Commissioner of Social Security.  AR 1-5 (decision and

18   additional exhibit).

19          Plaintiff filed this action on July 22, 2014.  ECF No. 1; see 42 U.S.C. §§ 405(g), 1383c(3).

20   The parties consented to the jurisdiction of the magistrate judge.  ECF Nos. 9, 11.  The parties'

21   cross-motions for summary judgment, based upon the Administrative Record filed by the

22   Commissioner, have been fully briefed.  ECF Nos.  19 (plaintiff's summary judgment motion), 20

23   (Commissioner's summary judgment motion), 23 (plaintiff's reply).

24                                  II.  FACTUAL BACKGROUND

25          Plaintiff was born on August 26, 1964, and accordingly was 46 years old on the alleged

26   disability onset date, making her a "younger person" under the regulations.  AR 30; see 20 C.F.R

27   _____

28   [2]  The AR is electronically filed at ECF Nos. 16-3 to 16-13 (AR 1 to AR 771).

                                                2

§§ 404.1563(c) (age as a vocational factor), 416.963(c) (same).  Plaintiff has a high school education, and can communicate in English.  AR 30.

### III.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue , 674 F.3d 1104, 1111 (9th Cir. 2012).  "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).  "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted). Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir.

////

1  2003) ("It was error for the district court to affirm the ALJ's credibility decision based on

2  evidence that the ALJ did not discuss").

3       The court will not reverse the Commissioner's decision if it is based on harmless error,

4  which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the

5  ultimate nondisability determination.'" Robbins v. SSA, 466 F.3d 880, 885 (9th Cir. 2006)

6  (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v.

7  Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

8  IV.  RELEVANT LAW

9       Disability Insurance Benefits and Supplemental Security Income are available for every

10  eligible individual who is "disabled." 42 U.S.C. §§ 423(a)(1)(E) (DIB), 1381a (SSI). Plaintiff is

11  "disabled" if she is "'unable to engage in substantial gainful activity due to a medically

12  determinable physical or mental impairment . . ..'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987)

13  (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

14       The Commissioner uses a five-step sequential evaluation process to determine whether an

15  applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4);

16  Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation

17  process to determine disability" under Title II and Title XVI). The following summarizes the

18  sequential evaluation:

19
20       Step one: Is the claimant engaging in substantial gainful activity? If
   so, the claimant is not disabled. If not, proceed to step two.

21  20 C.F.R. §§ 404.1520(a)(4)(i), (b) and 416.920(a)(4)(i), (b).

22       Step two: Does the claimant have a "severe" impairment? If so,
   proceed to step three. If not, the claimant is not disabled.

23  Id., §§ 404.1520(a)(4)(ii), (c) and 416.920(a)(4)(ii), (c).

24       Step three: Does the claimant's impairment or combination of
25  impairments meet or equal an impairment listed in 20 C.F.R., Pt.
   404, Subpt. P, App. 1? If so, the claimant is disabled. If not,
26  proceed to step four.

   Id., §§ 404.1520(a)(4)(iii), (d) and 416.920(a)(4)(iii), (d).

27
28       Step four: Does the claimant's residual functional capacity make
   him capable of performing his past work? If so, the claimant is not

1    disabled.  If not, proceed to step five.

2  Id., §§ 404.1520(a)(4)(iv), (e), (f) and 416.920(a)(4)(iv), (e), (f).

3        Step five: Does the claimant have the residual functional capacity
         perform any other work?  If so, the claimant is not disabled.  If not,
4        the claimant is disabled.

5  Id., §§ 404.1520(a)(4)(v), (g) and 416.920(a)(4)(v), (g).

6      The claimant bears the burden of proof in the first four steps of the sequential evaluation

7  process.  20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or

8  disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5.  However, "[a]t the fifth step of the

9  sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not

10 disabled and can engage in work that exists in significant numbers in the national economy."  Hill

11 v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

12                      V.  THE ALJ's DECISION

13     The ALJ made the following findings:

14       1.  The claimant meets the insured status requirements of the Social
         Security Act through September 30, 2016.
15
         2.  [Step 1] The claimant has not engaged in substantial gainful
16       activity since March 20, 2011, the alleged onset date (20
         CFR 404.1571 et seq., and 416.971 et seq.).
17
         3.  [Step 2] The claimant has the following severe impairments; left
18       L4·5 foraminal disc herniation with left lumbar radiculopathy,
         arthritis of the bilateral knees. migraines, and depression (20
19       CFR 404.1520(c) and 416.920(c)).

20       4.  [Step 3] The claimant does not have an impairment or
         combination of impairments that meets or medically equals the
21       severity of one of the listed impairments in 20 CFR Part 404,
         Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526,
22       416.920(d), 416.925 and 416.926).

23       5.  [Preparation for Step 4]  After careful consideration of the entire
         record, I find that the claimant has the residual functional capacity
24       to perform light work as defined in 20 CFR 404.1567(b) and
         416.967(b), but she must be allowed to sit or stand alternatively at
25       will, provided that she is not off task more than 10% of the work
         period.  She can never climb ladders, ropes, or scaffolds.  She can
26       stoop, crouch, kneel, crawl, balance with a hand-held assistive
         device, and climb ramps and stairs occasionally.  She must avoid all
27       exposure to extreme cold and unprotected heights.  She must avoid
         all use of hazardous machinery.  She is limited to simple (defined in

28

                                    5

the Dictionary of Occupational Titles as SVP levels 1 and 2), routine, and repetitive tasks.

6. [Step 4] The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. [Step 5] The claimant was born on August 26, 1964 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. [Step 5, continued] The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. [Step 5, continued] Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 20, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 21-29.

As noted, the ALJ concluded that plaintiff was "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A).  AR 31.

## VI.  ANALYSIS

Plaintiff alleges that the ALJ erred by rejecting the opinion of plaintiff's treating physician, Steven Wall, M.D. (ECF No. 19 at 9-14).[3]

> At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing"

---

[3]  Plaintiff also argues that the ALJ made incomplete findings at Step 2 of the sequential analysis. ECF No. 19 at 14-16.  Because the wrongful rejection of the treating physician calls for a remand for the payment of benefits, there is no need to examine the asserted Step 2 error which, if substantiated, would result in a remand for further proceedings.

1

2

3

4

5

> reasons.  <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1396 (9th Cir. 1991).
> We have also held that "clear and convincing" reasons are required
> to reject the treating doctor's ultimate conclusions.  <u>Embrey v.
> Bowen</u>, 849 F.2d 418, 422 (9th Cir. 1988). Even if the treating
> doctor's opinion is contradicted by another doctor, the
> Commissioner may not reject this opinion without providing
> "specific and legitimate reasons" supported by substantial evidence
> in the record for so doing.  <u>Murray v. Heckler</u>, 722 F.2d 499, 502
> (9th Cir. 1983).

6

<u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996).

7

8

9

As discussed below, the ALJ wrote a careful opinion that gives clear and specific reasons for giving the treating physician's opinions "little weight."  However, those reasons are neither convincing nor legitimate.

10

A.  <u>Opinions of the Treating Physician, Steven Wall, M.D.</u>

11

12

13

14

15

Steven Wall, M.D., treated plaintiff starting in 2009.  AR 28.  His treatment records are in the administrative record at AR 276-96 (December 10, 2009 to April 28, 2011) (Exh. B1F), 602-33 (April 28, 2011 to January 23, 2013) (Exh. B17F).  On June 28, 2012, Dr. Wall completed a Physical Residual Functional Capacity Questionnaire, following his June 25, 2016 physical exam of plaintiff.  AR 578-83 (Exh. B16F).  The ALJ gave the opinion "little weight."

16

17

18

19

20

Dr. Wall diagnosed plaintiff with "low back pain," "neck pain," and osteo-arthritis ("os") at the knees.  AR 578.[4]  The "clinical findings and objective signs" that supported this diagnosis were "tenderness lumbar spine ('LS') area and cervical spine ('C-spine'), with limited range of motion ('RoM') and tenderness and mild swelling both knees."  AR 578.  Dr. Wall also listed plaintiff's symptoms as "pain in back, knee, and neck; fatigue."  AR 578.

21

22

23

24

25

Dr. Wall opined that plaintiff was not a malingerer, and that her impairments, which began in March 2011, had lasted or could be expected to last 12 months.  AR 579, 582, 583.  He opined that emotional factors contributed to the severity of his patient's symptoms and functional limitations, indicating that anxiety was the relevant psychological impairment.  AR 579.  He further opined that plaintiff's impairments were reasonably consistent with the symptoms and

26

27

28

---

[4]  Much of the immediately following description is taken from plaintiff's excellent brief, which well and succinctly summarizes Dr. Wall's observations, findings and opinions.

1   functional limitations he described in his evaluation.  AR 579.  Dr. Wall also opined that stress

2   "exacerbates [plaintiff's] pain," so that she could only do "low stress jobs."  AR 579.

3       Dr. Wall further opined that plaintiff's experience of pain would "frequently" interfere

4   with the attention and concentration she needed to perform even simple work tasks, and that she

5   was likely to be absent from work more than four days per month.  AR 579, 582.  In assessing

6   plaintiff's functional limitations in a competitive work environment, Dr. Wall assessed her ability

7   to walk as the length of one block, and her ability to sit at one time as 15 minutes.  AR 580.  He

8   opined that plaintiff would be able to stand only 10 minutes before needing to sit down or walk

9   around, and that plaintiff would be able to "sit and stand/walk" for a total of about 4 hours in an

10  8-hour day, with normal breaks.  AR 580.  In addition, Dr. Wall opined, plaintiff would need to

11  walk around during the workday, every 30 minutes, for 4-5 minutes each time.  AR 580.

12      Dr. Wall further opined that plaintiff needed a job which would permit shifting positions

13  at will, and that she would sometimes need to take unscheduled breaks during the day.  AR 581.

14  The breaks would last 15 minutes, during which she would need to recline.  AR 581.  Dr. Wall

15  also indicated that plaintiff needed to use a cane.  AR 581.  Dr. Wall opined that in a competitive

16  work situation, plaintiff would "rarely" be able to lift and carry up to 10 pounds, and she would

17  "never" be able to lift and carry 10 pounds or more.  AR 581.  He further opined that plaintiff

18  would "rarely" be able to twist or climb stairs, and could "never" stoop or bend, crouch, or climb

19  ladders.  AR 582.  In addition, Dr. Wall opined, plaintiff has significant limitations in repetitive

20  reaching, handling, or fingering, and could only perform these functions 5-10% of the workday.

21  AR 582.

22      The ALJ gave "little weight" to Dr. Wall's opinion regarding plaintiff's physical

23  limitations because it: (1) "understates the claimant's physical capacity;" (2) "is inconsistent with

24  the generally mild findings from diagnostic images of the claimant's spine and knees" (citing

25  Exhs. B3F/22, B3F/25, B9F/4, B9F/10, B9F/69, and BI7F/10); (3) "is inconsistent with the

26  claimant's admitted ability to lift 15 to 20 pounds" (citing Exh. B3E); (4) "is inconsistent with the

27  claimant's ability to perform some work after the alleged disability onset date" (citing ExhB5D);

28  and (5) "is inconsistent with the claimant's somewhat normal activities of daily living . . . which

1    indicate some physical capacity" (citing Exh. B3E and the hearing testimony). AR 28.[5]

2         As plaintiff argues, since Dr. Wall is a treating physician, the ALJ was entitled to reject it

3    only for "clear and convincing reasons," or at least "specific and legitimate reasons." She argues

4    that the ALJ's reasons for rejecting Dr. Wall's opinions are neither clear and convincing nor

5    specific and legitimate. ECF No. 19 at 10.

6         B. Reasons for Giving the Opinion "Little Weight"

7           1. Physical capacity

8         The ALJ found that plaintiff's physical capacity is greater than is asserted in Dr. Wall's

9    opinion, citing plaintiff's receipt of unemployment compensation during the relevant period.

10   According to the ALJ, plaintiff was "required . . . to certify that she was willing and able to

11   engage in work activity, which is inconsistent with her allegation of disability." AR 25.

12        It is not clear how the ALJ reached this conclusion, since it may be a legal conclusion

13   based upon the California Unemployment Insurance Code, or it may be a factual conclusion

14   based upon evidence the ALJ failed to identify. What is clear is that according to plaintiff's

15   undisputed testimony, the $418 plaintiff earned after the onset date represented a small enough

16   number of *part time* or *per diem* hours that she remained eligible for unemployment benefits.

17   AR 56.

18        Thus, if the ALJ decision is concluding that plaintiff's receipt of unemployment benefits

19   necessarily means that she was willing and able to engage in *full time* work, that conclusion

20   ignores plaintiff's undisputed testimony that she was able to do at most part time or per diem

21   work. If the decision is concluding that plaintiff made an untruthful certification under California

22   law, that conclusion is not supported by substantial evidence, as the ALJ does not identify any

23   such certification in the record (nor is it clear what effect, if any, that would have on whether

24   plaintiff was actually disabled or not). If the decision is drawing a legal conclusion based upon

25   the ALJ's understanding of California's unemployment insurance law, there is nothing in the

26

27   [5] The ALJ also gave "reduced weight" to Dr. Wall's opinion that plaintiff was limited to a low stress job. AR 29. It is unnecessary to address plaintiff's assertion that this was also error.

28

1  decision that cites the law being interpreted, or explains the conclusion.[6]

2      If the ALJ decision is concluding that *any* "work activity" on plaintiff's part is

3  "inconsistent with her allegation of disability," that is a legal error.  "[W]hile receipt of

4  unemployment benefits can undermine a claimant's alleged inability to work fulltime," the ALJ

5  must consider whether "the claimant held himself out as available for full-time or part-time

6  work."  Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161-62 (9th Cir. 2008).  That is

7  because "[o]nly the former [holding himself out for full-time work] is inconsistent with his

8  disability allegations."  Id. at 1162 (emphasis added).

9          2.  Clinical findings

10     The ALJ found that Dr. Wall's opinion was "inconsistent with the generally mild" clinical

11  findings.  AR 28.  Although the decision cites only Exhibits B3F/22, B3F/25, B9F/4, B9F/69 and

12  B17F/10 for direct support of this proposition, elsewhere in the decision, the ALJ thoroughly

13  reviews the clinical and diagnostic findings.  While some of those findings could reasonably be

14  considered "mild," especially those taken soon after plaintiff's injury, there are a great many

15  which are not mild.

16     Soon after plaintiff's fall, diagnostic imaging of plaintiff's knees showed no significant

17  abnormality (Exh. B3F/22, 25, January 27, 2011), and even immediately after the onset dates, the

18  results showed no significant abnormality (Exh. B9F/4, 10, March 22, 2011).  However, some

19  abnormalities emerged soon afterward in the diagnostic tests.  On June 3, 2011, an MRI

20  ("Magnetic Resonance Imaging") of the lumbar spine showed, among other things, "Left

21  posterolateral disc bulge moderately compromises the left F4-5 neural foramem, potentially

22  encroaching on the left L4 nerve root," as the ALJ noted.  AR 514 (Exh. B9F/69).  As the ALJ

23  further notes, on numerous physical examinations from January 27, 2011 onward, the results were

24  tenderness in the spine, painful range of motion, difficulty with straight leg raising, limited range

---

25  [6]  Without purporting to rule on California law in this matter, the court notes that it appears from
26  a cursory glance of that law, that California unemployment benefits may be available to eligible
    persons even if that person is only able to do part time work.  See, e.g., Cal. Unemp. Ins. Code
27  § 1253.8 ("[a]n unemployed individual shall not be disqualified for eligibility for unemployment
    compensation benefits solely on the basis that he or she is only available for part-time work").

28

1    of motion, decreased sensation detected in plaintiff's lumbar spine and left lower extremity,

2    antalgic gait, moderate guarding, spasm at the L4-5 level, tenderness in the left sciatic notch,

3    painful range of motion in the lumbar spine, and "extremely tender" over the left lumbar

4    paraspinous muscles.  AR 24.

5         The ALJ does not explain why these are "mild" findings.  As plaintiff asserts, only by

6    playing doctor could the ALJ override the treating physician's view that these results were not

7    mild, and that they are instead, entirely consistent with the treating doctor's functional limitation

8    findings.

9         More to the point, this is a case about pain.  As the above discussion shows, the principal

10   finding from plaintiff's medical exams is that she experiences pain.  Dr. Wall's treatment notes

11   also show that plaintiff experiences pain.  Plaintiff's self-assessment, her testimony at the hearing,

12   and the third-person assessment (AR 234-41, Exh. B4E), confirm that plaintiff experiences a

13   great deal of pain much of the time, and that it is that pain that severely limits her functional

14   capacity.  Accordingly, once the ALJ has found that plaintiff's medically determinable

15   impairments could reasonably be expected to cause plaintiff's pain or other symptoms, as she

16   found here (AR 25), the ALJ may not then base her determination of plaintiff's functional

17   capacity upon clinical and diagnostic findings which do not reflect the level of pain.  Burch v.

18   Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) ("an ALJ may not reject a claimant's subjective

19   complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of

20   pain").

21              3.  Lifting 15 to 20 pounds

22        The ALJ found that plaintiff "admittedly can lift 15 to 20 pounds at a time."  AR 25

23   (citing Exh. B3E, and the hearing testimony).  The ALJ also found that plaintiff "was able to lift"

24   her 18 pound grandson, even though she had difficulty holding him.  These findings are not

25   supported by substantial evidence, as they are unrealistic exaggerations of plaintiff's own

26   testimony.

27        The cited exhibit is plaintiff's self-assessment.  AR 225-32 (Exh. B3E) ("Function Report

28   – Adult).  Plaintiff does not, as the decision implies, simply "admit" that she can lift 15 to 20

1  pounds at a time.  To the contrary, plaintiff states "I can *only* lift 15 to 20 pds *or less*," and that

2  doing so *"still causes pain . . .."* AR 230 (emphasis added).  This assessment – particularly the

3  "only" and "or less" qualifiers – is entirely consistent with plaintiff's testimony under oath at the

4  hearing.  There, she testified that the heaviest thing she lifted on a day-to-day basis were pots

5  weighing "five, maybe four or five pounds . . .." AR 49.  Further, plaintiff testified that she was

6  unable to hold on to what little she could lift, and was constantly dropping things.  Moreover, the

7  ALJ's decision ignores the most important part of the self-assessment's comment on lifting 15 to

8  20 pounds, namely that plaintiff is *in pain* when she tries to lift such weight.

9  The ALJ also relies on plaintiff's testimony for the proposition that plaintiff "was able to

10  lift" her 18 pound grandson.  AR 26.  However, plaintiff's testimony is that she is *not* able to hold

11  her grandchildren, and that when she managed to lift the 18 pound grandson, she dropped him.

12  AR 73.

13  4.  <u>Work after the onset date</u>

14  Plaintiff was a CNA (certified nursing assistant), when she suffered a fall at work on or

15  about December 18, 2010.  AR 491 ("Doctor's First Report of Occupational Injury or Illness").[7]

16  Plaintiff continued working, even though she developed lower back pain and knee pain.  AR 492.

17  According to her testimony, she tried to keep working even though the pain she was experiencing

18  prevented her from effectively carrying out aspects her job, and she knew she should not be

19  working.  <u>See</u> AR 43-44.[8]  Plaintiff continued trying to work until her supervisor told her that if

20  she was not feeling up to it, she should "just call in."  AR 43.  That was her last day of regular

21  work.  AR 43.

22  The ALJ cites Exhibit B5D as evidence of "work activity after the alleged onset date."

23  AR 25.  The decision notes that the work "did not constitute disqualifying substantial gainful

24  activity," but nevertheless concludes that it indicates "that the claimant had the capacity to

25  ─────────────
   [7]  It appears that plaintiff was working two jobs.  AR 492.  She was also a "site counselor at the
26  Deuel Vocational Institute."  AR 528.
   [8]  "Because things was getting pretty bad at that time with my health.  I mean, it was you know, I
27  was steady trying to go to work when I should have been off, but I kept asking my doctor to let
   me go back, let me go back, you know."  AR 43

28

perform some work." AR 25.  In fact, the cited Exhibit shows that plaintiff earned a total of $418 in the second quarter of 2011 from her two jobs, which would have included the first 19 or 20 days of March, *before* the onset date.  AR 213 (Exh. B5D).[9]

Moreover, this was part time, per diem work, and "it wasn't enough to cover my bills . . .." AR 55.  Plaintiff's testimony is clear that she "was trying to stay working," and tried to do so for "[a] couple of months," but that "it go so bad on me I, I couldn't, I couldn't do it." AR 55-56.  It was legal error for the ALJ to find that this paltry amount of part time or per diem work, and plaintiff's ability to perform "some" work, undermined the treating physician's opinion.  See Webb v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005) ("[t]hat Webb sought employment suggests no more than that he was doing his utmost, in spite of his health, to support himself"); see also, Gatliff v. Comm'r of Soc. Sec. Admin., 172 F.3d 690, 691 (9th Cir. 1999) ("[s]ubstantial employment cannot be pieced together from a collection of insubstantial attempts").  To the contrary, plaintiff's "attempt to work a few hours is evidence of nothing," as plaintiff puts it, except perhaps, a determination to keep working, if possible, no matter what.

### 5. Activities of daily living

The ALJ found that Dr. Wall's opinion was inconsistent with plaintiff's "somewhat normal activities of daily living . . . which indicate some physical capacity."  AR 28-29.[10] Specifically, relying on plaintiff's self-assessment (Exh. B3E) and her hearing testimony, the ALJ found that plaintiff was "largely independent in self-care," can carry out "household chores," and "has the ability to drive a car."  AR 26.  These findings are not supported by substantial evidence, and indeed are contradicted by the evidence cited.

Exhibit B3E is plaintiff's self-assessment.  AR 225-32.  There, plaintiff states that she

_____

[9]  The $337 also shown for the second quarter was accumulated vacation pay, according to plaintiff's undisputed testimony.  AR 58 (transcript).
[10]  The ALJ's language here, and elsewhere, strongly indicates that she is using the wrong legal standard in determining disability.  Here, the ALJ states that plaintiff is not disabled because she has "some" physical capacity.  Elsewhere, she rejects plaintiff's allegations of "debilitating" physical symptoms (AR 25), concludes that plaintiff had certified that she could do "some" work (AR 21, 25), and rejects claims of "totally incapacitating" symptoms (AR 29).  However, "[o]ne does not need to be 'utterly incapacitated' in order to be disabled."  Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.1989)).

1   cannot shower without help (AR 225 ¶ 6), stays in bed all day when the pain is bad (¶ 6), is

2   unable to "do much" for the granddaughter who lives with her and who she is supposed to be

3   taking care of (AR 226 ¶ 7), is unable to sleep (¶ 11), cannot dress herself without help (¶ 12(a)),

4   can't stand for a shower or sit for a bath (¶ 12(a)), can't comb her hair when she is in pain

5   (¶ 12(a)), needs help getting up from the toilet (¶ 12(a)), needs reminders to groom and take

6   medicine (AR 227 ¶ 12(b), (c)), can prepare foods only by throwing things into the microwave or

7   making sandwiches, but cannot cook a full meal because she can't sit for long, can't stand for

8   long, and has to lie down to rest too often (¶ 13(a), (b)), while she can, as the ALJ stated, load

9   clothes into a washing machine, and fold clothes, she can only do these things with assistance, as

10  she cannot carry the clothes to the washing machine, and can fold only light clothing, never

11  blankets or sheets as those require too much movement of her body (¶ 14(a)), cannot do other

12  house or yard work because she cannot bend without pain (AR 228 ¶ 14(d)), does not go out

13  unless she absolutely has to, and then is usually accompanied by her daughters (¶ 15(a), (b)).

14  This assessment is substantially corroborated by the third party assessment.  <u>See</u> AR 234-41

15  (Exh. B4E).

16          Plaintiff's testimony was consistent with her written self-assessment.  While the ALJ

17  found that plaintiff "has the ability to drive," plaintiff's self-assessment makes clear that she can

18  only do so "when I am not on my medicine."  AR 228.  As plaintiff's hearing testimony

19  corroborates, "When I'm not taking my medication, I could drive short distance."  AR 65.

20  However, the testimony also makes clear that plaintiff drives only when she absolutely has to, and

21  that she is *in pain* while doing it, because she cannot drive while on her pain medication:

22          Q: So how is your driving?

23          A: When I'm not taking my medication I could drive short distance.

24          Q: Well, how often is that?

25          A: If I know I have a doctor's appointment and I don't have a ride
26          around to take me, or my daughter is not available to take me, my
            22-year-old, I won't take my medication at that time.

27          Q: So how does that work out for you?

28          A: Well, it's not easy.  It could be painful.

1

> Q: When you say painful, on a one-to-ten scale what are we talking about?

2

3

> A: About a – anywhere from a six or seven.

4  AR 65.  The fact that plaintiff can engage in an essential activity, like driving to the doctor,

5  *despite* her pain "does not mean she could concentrate on work despite the pain or could engage

6  in similar activity for a longer period given the pain involved."  Vertigan v. Halter, 260 F.3d

7  1044, 1050 (9th Cir. 2001).  In addition, while plaintiff can load clothes into a washing machine,

8  she needs help carrying the clothes to the machine, and getting the clothes out.  AR 67, 236.

9  Although plaintiff can make simple meals, she does it with the help of her granddaughter, who

10  "gets in there and help me cut up stuff."  AR 69.[11]

11         Thus, Dr. Wall's opinion is fully consistent with plaintiff's activities of daily living, and it

12  was error for the ALJ to use her activities of daily living as a basis for rejecting the doctor's

13  opinion.

14         C.  Remand for Benefits or for Further Proceedings

15         As discussed above, the ALJ erred in giving "little weight" to the treating physician's

16  opinion.  That error was not harmless, because the treating physician's report directly conflicts

17  with the ALJ's RFC finding and her finding of non-disability.

18         Accordingly, the court is authorized "to 'revers[e] the decision of the Commissioner of

19  Social Security, with or without remanding the cause for a rehearing.'"  Treichler v. Comm'r of

20  Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014).  "[W]here the record has been developed

21  fully and further administrative proceedings would serve no useful purpose, the district court

22  should remand for an immediate award of benefits."  Benecke v. Barnhart, 379 F.3d 587, 593 (9th

23  Cir. 2004).

24

> More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no

25

26

---

27  [11]  Even citing plaintiff's ability to watch television as evidence of her concentration ability

28  (AR 21) is an exaggeration, because "I fall asleep on pretty much every movie I watch."  AR 70.

1
2
3

outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

4   Benecke, 379 F.3d at 593 (citing Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000), cert.

5   denied, 531 U.S. 1038 (2000)).

6       1.  Outstanding issues

7       Under the second step in the remand analysis,[12] the court must "review the record as a

8   whole and determine whether it is fully developed, is free from conflicts and ambiguities, and 'all

9   essential factual issues have been resolved.'"  Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir.

10  2016) (quoting Treichler, 775 F.3d at 1101).  This step is satisfied here.

11      First, unlike the situation in Dominguez, there is no internal conflict or ambiguity in the

12  treating physician's opinion or the limitations contained in it.  To the contrary, Dr. Wall's

13  treatment notes fully support the functional limitations he found.  They are supported by his

14  diagnoses of "low back pain," "neck pain," and osteo-arthritis ("os") at the knees.  See AR 578.

15  Dr. Wall's "clinical findings and objective signs" that supported his conclusions were "tenderness

16  lumbar spine ('LS') area and cervical spine ('C-spine'), with limited range of motion ('RoM')

17  and tenderness and mild swelling both knees."  AR 578.  Moreover, Dr. Wall listed plaintiff's

18  symptoms as "pain in back, knee, and neck; fatigue."  AR 578.

19      Second, there is no conflict to be resolved in the remainder of the administrative record.

20  Dr. Wall's listing of functional limitations are fully consistent with and supported by plaintiff's

21  treatment history and the medical opinions of other treating doctors.  After plaintiff's injury,

22  Johnston Co., M.D., her treating physician overseeing her care for the Workers' Compensation

23  board, put plaintiff on "Limited Duty," which restricted her from "repetitive bending/stooping"

24  and "kneeling or squatting."  AR 447-533 (Exh. B9F).  While under the care of Jeff Jones, M.D.,

25  plaintiff endured a rhizotomy,[13] and the injection of medication by means of needles inserted into

26
27
28

---

[12]  As discussed above, the first step is satisfied because the ALJ failed to provide legally sufficient reasons for rejecting Dr. Wall's opinion.

[13]  It appears that a rhizotomy is a surgical procedure that involves the surgical destruction of the (continued…)

1    her spine.  See AR 635 (July 30, 2012) (Exh. B18F), 638 (May **17**, 2012), 643 (September 13,

2    2012).  Based upon plaintiff's reaction to certain medication, Dr. Jones, a treating physician,

3    concluded that "the diagnosis of lumbar facet pain [was] very likely."  AR 638.

4           The only possible conflict arises with the opinions of the agency non-examining

5    physicians, J. Zheutlin, M.D., on initial consideration, and G. Taylor, M.D., on reconsideration.

6    See AR 88, 126.  The ALJ gave their opinions "substantial weight."  AR 27.  It is true that those

7    opinions found that plaintiff could do light work, including lifting 20 pounds, standing for six

8    hours, sitting for six hours, as well as stooping, kneeling, crouching and crawling (AR 87, 100).

9    However, those opinions expressly discount plaintiff's statements regarding her symptoms,

10   finding that they are "not fully credible *based on objective medical evidence*."  AR 86, 99.  This

11   cannot be considered to be substantial evidence sufficient to contradict the treating doctors'

12   opinions, because plaintiff is not required to produce objective medical evidence of the pain or

13   fatigue itself, or the severity thereof."  Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014)

14   (internal quotation marks omitted).  The Commissioner herself recognizes that "symptoms

15   sometimes suggest a greater severity of impairment than can be shown by objective medical

16   evidence alone."  See "Titles II & XVI: Considering Allegations of Pain & Other Symptoms in

17   Residual Functional Capacity & Individualized Functional Assessments & Explaining

18   Conclusions Reached," SSR 95-5p (S.S.A. Oct. 31, 1995).  Accordingly, while the agency doctor

19   opinions may well be valid as far as they go, those opinions simply do not reach the critical

20   question of whether plaintiff's pain testimony is credible based upon the proper factors, such as

21   the plaintiff's daily activities, or "other evidence" besides the objective medical evidence.  See

22   SSR 95-5p.  The court knows of no other matters in the record regarding plaintiff's pain

23   testimony that need resolution, and the Commissioner has not identified any.

24          2. Crediting Dr. Wall's opinion as true

25          Under the third step, this court "must next consider whether the ALJ would be required to

26   _____

27   anterior or posterior spinal nerve roots to relieve pain.  See http://www.health.harvard.edu/d-through-i (last visited by the court on March 17, 2016); http://c.merriam-webster.com/medlineplus/rhizotomy (last visited by the court on March 17, 2016).

28

1    find the claimant disabled on remand if the improperly discredited evidence were credited as

2    true." Dominguez, 808 F.3d at 407 (internal quotation marks omitted).  If Dr. Wall's opinion

3    were credited as true, indeed if only a portion of it were credited as true, plaintiff would

4    necessarily be found disabled under the applicable regulations.

5           Specifically, Dr. Wall opined that plaintiff could sit and stand/walk for no more than 4

6    hours out of an 8 hour workday (in other words, she would need to lie down for 4 hours out of an

7    8 hour workday).  AR 580.  She can "never" lift 10 pounds (and can only "rarely" lift even less

8    than that).  AR 581.  She can use her hands for gasping, turning and twisting only 5% of the time.

9    AR 582.  She can use her fingers for fine manipulation only 10% of the time.  AR 582.  She can

10   use her arms for reaching only 5% of the time.  AR 582.  She would be absent from work more

11   than four days per month.  AR 582.

12          When plaintiff's limitations, as described by Dr. Wall, were put to the vocational expert at

13   the hearing, he testified that there were "no jobs" plaintiff could do.  AR 76.  Not surprisingly,

14   apart from everything else, there is no job available in which plaintiff could miss 4 days of work

15   every month.  AR 76.  Indeed, even without the testimony of a vocational expert, it is clear from

16   the regulations themselves that plaintiff is not even able to do "sedentary" work.  See "Titles II &

17   XVI: Determining Capability to Do Other Work – the Med.-Vocational Rules of Appendix 2,"

18   SSR 83-10 (S.S.A. 1983) (sedentary work requires lifting up to "10 pounds at a time," "good use

19   of the hands and fingers for repetitive hand-finger actions," standing up to "2 hours of an 8-hour

20   workday," sitting "approximately 6 hours of an 8-hour workday."  Id.

21              3.  Discretion

22          Where the above steps are satisfied, this court must exercise its discretion in determining

23   whether to remand for further proceedings, or for the immediate calculation and award of

24   benefits.  Dominguez, 808 F.3d at 407 (if disability finding would necessarily follow if

25   discredited evidence were credited as true, "the district court may exercise its discretion to

26   remand the case for an award of benefits").  If, despite satisfying the above steps, the "record as a

27   whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of

28   the Social Security Act," the court should remand for further proceedings.  Burrell v. Colvin, 775

18

1   F.3d 1133, 1141 (9th Cir. 2014) (quoting <u>Garrison</u>, 759 F.3d at 1021).  However, the court would

2   be "abus[ing] its discretion by remanding for further proceedings where the credit-as-true rule is

3   satisfied and the record afforded no reason to believe that [the plaintiff] is not, in fact, disabled."

4   <u>Garrison</u>, 759 F.3d at 1021.

5       Here, the record leaves no doubt that the plaintiff is disabled within the meaning of the

6   Act.  This is a claimant who, before her injury, was working two jobs to support herself and her

7   granddaughter.  Even after her injury, she continued trying to work, even against the advice of her

8   doctors.  She only stopped working when her supervisor essentially made her stop.  Her injuries

9   were real and fully documented by MRI imaging and treatment notes.  Her entirely credible

10  testimony, and her treating doctors' opinions, show that she is unable to carry out the functions

11  even of a sedentary job.

12                              VII.  CONCLUSION

13      For the reasons set forth above, IT IS HEREBY ORDERED that:

14      1.  Plaintiff's motion for summary judgment (ECF No. 19), is GRANTED;

15      2.  The Commissioner's cross-motion for summary judgment (ECF No. 20), is DENIED;

16      3.  This matter is remanded to the Commissioner for the immediate calculation and award

17  of benefits to plaintiff; and

18      3.  The Clerk of the Court shall enter judgment for plaintiff, and close this case.

19  DATED: March 18, 2016

20                                          _allison Clare_____

21                                          ALLISON CLAIRE
                                            UNITED STATES MAGISTRATE JUDGE

22

23

24

25

26

27

28